ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| GEOVANNY ORTIZ PÉREZ<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | TA2026RA00247 | *Revisión judicial* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>GMA-1000-210-26<br><br>Sobre:<br>Visita y traslado |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

**I.**

Comparece, por derecho propio e *in forma pauperis*, el señor Geovanny Ortiz Pérez (recurrente), quien solicita la revisión de una *Respuesta al Miembro de la Población Correccional* emitida el 9 de abril de 2026 por la División de Remedios Administrativos (DRA) del Departamento de Corrección y Rehabilitación (DCR o recurrido). En esta, se adjuntó la respuesta del área concernida, en la cual el técnico de servicios sociopenales informó que el recurrente sería entrevistado y orientado sobre el procedimiento de salir de la institución para visita colateral.

Además, del expediente surgió que el 23 de abril de 2026, la DRA denegó una solicitud de reconsideración del recurrente, tras confirmarse la decisión del área de sociales de denegar la solicitud de traslado de la Institución Guayama 1000 a Bayamón.

En su recurso de revisión administrativa, el señor Ortiz Pérez formuló los siguientes planteamientos de error:

ERRÓ [EL DCR] Y LA OFICIALIDAD DE [LA] INST. DE BAYAMÓN 501 AL TRASLADAR AL RECURRENTE SIN VER UN COMITÉ DE CLASIFICACIÓN A NIVEL CENTRAL Y LA UNIDAD DE CONTROL DE POBLACIÓN AL NO CUMPLIR CON LA LEY NÚM. 130 DE 26 DE OCTUBRE DE 2009, INCISO (G)[,] ARTÍCULO 50 DE LA LEY

116 DE 1974 PARA QUE EL RECURRENTE NO [RECIBIERA VISITA]. EL RECURRENTE NUNCA [HA] TENIDO NINGÚN PROBLEMA CON SUS COMPAÑEROS CONFINADOS[.]

ERRÓ [EL DCR] AL MENOSCABO[,] ES PARTE DE UN PATRÓN QUE [HA] RECIBIDO POR AÑOS[,] PRODUCTO DEL CAPRICHO DE FUNCIONARIOS [DEL DCR] Y POR LA NEGLIGENCIA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO EN LA SUPERVISIÓN DE SUS EMPLEADOS. QUE EL RECURRENTE [...] NO TIENE PROBLEMAS CON SUS COMPAÑEROS EN 22 AÑOS QUE LLEVA CONFINADO QUE NIVEL CENTRAL Y LA UNIDAD DE CONTROL DE POBLACIÓN AL NO CUMPLIR CON EL MANDATO CONSTITUCIONAL ESTABLECIDO MEDIANTE LA LEY NÚM. 377 ART. (3) INCISO (B) DE 16 DE SEPTIEMBRE DE 2004.

ERRÓ [EL DCR] Y LA OFICIALIDAD DE LA INST. BAYAMÓN 501 AL TENIENTE COLÓN[, ENCARGADO DE SEGURIDAD] DIALOGANDO CON EL RECURRENTE DONDE ADMITE QUE LOS TSS SAMMY [CUEVAS] Y PRESIDENTA SOLICITARON EL TRASLADO DEL RECURRENTE [...] POR CAPRICHOS PERSONALES Y NO CUMPLIR CON LA SECCIÓN 19 DEL ARTÍCULO VI DE LA CONSTITUCIÓN DE PUERTO RICO Y VIOLAR EL ARTÍCULO 11 Y [EL] ARTÍCULO (2) DE LA LEY NÚM. 116 DE 22 DE JULIO DE 1974[.]

ERRÓ [EL DCR] Y LA UNIDAD DE CLASIFICACIÓN A NIVEL CENTRAL Y LA UNIDAD DE CONTROL DE POBLACIONES AL VIOLAR EL DERECHO CONSTITUCIONAL QUE TIENE EL RECURRENTE DE PODER ESTAR CERCA GEOGRÁFICAMENTE DE SU [NÚCLEO] FAMILIAR Y ASÍ PUEDE [AUMENTAR] SUS [VISITAS] Y NO SE SIGA AFECTANDO SU PLAN INSTITUCIONAL[,] EL CUAL NO PUEDE [RECIBIR VISITA].

ERRÓ [EL DCR] Y LA UNIDAD DE CLASIFICACIÓN A NIVEL CENTRAL Y LA UNIDAD DE CONTROL DE POBLACIONES AL PASAR POR ALTO EL DAÑO EMOCIONAL Y [DECIR] QUE EL RECURRENTE NO PUEDE ESTAR EN LA INST. BAYAMÓN 501 [PORQUE] EL RECURRENTE LOS TIENE DEMANDADOS EN [EL] TRIBUNAL [DE] BAYAMÓN Y [PASAR] POR ALTO EL AJUSTE Y PROGRESO [Y] BUENA CONDUCTA QUE TIENE EL RECURRENTE DE 22 AÑOS DE CONFINAMIENTO[,] 18 AÑOS TRABAJANDO Y ESTUDIANDO Y CON [MÁS] DE 20 SALIDAS [A ACTIVIDADES] EN IGLESIAS Y DANDO CHARLAS DE PREVENCIÓN Y PASAR POR ALTO [LAS RECOMENDACIONES] DEL COMITÉ DE CLASIFICACIÓN DE LA INSTITUCIÓN GUAYAMA 1000[, EL] CUAL RECOMENDÓ QUE CONCEDIERAN TRASLADO AL RECURRENTE A LA INSTITUCIÓN BAYAMÓN 501, VÉASE [ANEJO 5.]

En esencia, el recurrente alegó que fue trasladado de manera arbitraria desde la Institución Bayamón 501 a la Institución Guayama 1000, sin que mediara el debido proceso de ley, sin evaluación previa del Comité de Clasificación y Tratamiento o de la unidad correspondiente, sin haber infringido norma institucional alguna y en contravención de la normativa aplicable a la ubicación institucional y a la rehabilitación. Sostuvo que dicho traslado lo ubicó lejos de su núcleo familiar, cuyos miembros, según adujo, residían o laboraban en Carolina, Fajardo y San Juan, lo que limitó sus visitas

familiares debido a la distancia, los gastos y las condiciones de salud de algunos familiares. Añadió que esa situación afectó su estabilidad emocional y obstaculizó su proceso de rehabilitación.

Además, adujo que las respuestas administrativas no atendieron adecuadamente sus reclamos, incluida su solicitud relacionada con la visita a su abuela de noventa y ocho (98) años de edad, al alegar que la agencia se limitó a referirlo a otros procedimientos o áreas sin conceder el remedio solicitado. Imputó al DCR haber actuado de forma caprichosa y arbitraria, haber menoscabado sus derechos al contacto familiar y a la rehabilitación, y haber ignorado las recomendaciones dirigidas a viabilizar su traslado a una institución correccional en Bayamón.

Por su parte, el 15 de junio de 2026, el DCR, representado por la Oficina del Procurador General de Puerto Rico (OPG), solicitó la desestimación del recurso. Adujo que el recurrente no identificó con claridad el dictamen recurrido e impugnó dos (2) determinaciones administrativas en un mismo recurso: una relacionada con la solicitud de visita a su abuela, tramitada bajo el remedio GMA-1000-210-26, y otra sobre su solicitud de traslado a Bayamón, atendida bajo el remedio GMA-1000-186-26. En la alternativa, planteó que las determinaciones debían confirmarse por estar sostenidas por el expediente administrativo y ser conformes a Derecho.

La OPG señaló que la DRA actuó correctamente al informar al recurrente que sería entrevistado y orientado por el técnico de servicios sociopenales sobre el procedimiento aplicable a su solicitud de visita. Expuso que el *Reglamento para Fomentar la Integración Familiar y Social en la Población Correccional*, Reglamento Núm. 9027, 16 de mayo de 2018, Departamento de Estado, requería que el técnico entrevistara al miembro de la población correccional y evaluara a los visitantes propuestos antes de autorizar su inclusión en el expediente de visitas. Por ello, afirmó que la agencia no denegó arbitrariamente

la visita, sino que canalizó la solicitud conforme al trámite reglamentario correspondiente.

Además, afirmó que la DRA carecía de jurisdicción para revisar o dejar sin efecto una determinación emitida por el Comité de Clasificación y Tratamiento. Precisó que, conforme al *Manual para la Clasificación de los Confinados*, Reglamento Núm. 9151, 22 de enero de 2020, Departamento de Estado, el proceso de traslado y ubicación de la población correccional correspondía a las unidades competentes del DCR. Por tanto, manifestó que la DRA fue diligente al canalizar la solicitud de traslado al área pertinente, pero no podía invalidar la determinación del comité. Añadió que, de estar inconforme, el señor Ortiz Pérez debía impugnar el dictamen del Comité de Clasificación y Tratamiento y no cuestionar colateralmente su ubicación mediante una solicitud de remedio administrativo ante la DRA.

Por los fundamentos que se exponen a continuación, procede confirmar la determinación recurrida.

**II.**

**A. Revisión judicial**

Mediante el recurso de revisión judicial, este Tribunal puede revisar las decisiones, órdenes, resoluciones y providencias finales emitidas por los organismos administrativos. Sec. 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672 (LPAUG); Art. 4.006(c) de la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y(c); Regla 56 del Reglamento de este Tribunal, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025). Dicho mecanismo procura asegurar que la agencia actúe dentro de los poderes delegados y conforme a la política legislativa aplicable. *Ramos Sánchez v. Banco Popular et al.*, 2026 TSPR 63, 218 DPR ___ (2026); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); D.

Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Forum, 2013, pág. 669.

La parte recurrente debe agotar los remedios administrativos disponibles antes de acudir al foro judicial. *AAA v. UIA*, 200 DPR 903 (2018); *Fuentes Bonilla v. ELA et al.*, 200 DPR 364 (2018). Esta doctrina evita la intervención judicial prematura y permite que la agencia complete el expediente, adjudique las controversias ante sí y exprese su posición final. *Ramos Sánchez v. Banco Popular et al.*, *supra*; *J. Exam. Tec. Méd. v. Elías et al.*, 144 DPR 483 (1997). No obstante, el trámite administrativo puede preterirse cuando se demuestre, mediante hechos específicos y bien definidos, que es inadecuado, que su agotamiento causaría un daño irreparable, que el balance de intereses no justifica exigirlo, que existe una violación sustancial de derechos constitucionales, que media dilación excesiva, que la agencia carece claramente de jurisdicción o que la controversia es estrictamente jurídica y no requiere la pericia administrativa. Sec. 4.3 de la LPAUG, *supra*, sec. 9673.

### B. Jurisdicción de la DRA, clasificación y traslados

El *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional*, Reglamento Núm. 8583, 4 de mayo de 2015, Departamento de Estado, creó la DRA como el organismo administrativo llamado a atender, en primera instancia, las solicitudes de remedio presentadas por los miembros de la población correccional. Art. V del Reglamento Núm. 8583, *supra*. Sin embargo, dicho organismo carece de jurisdicción para atender solicitudes en las que se impugne una decisión emitida por algún comité conforme a los reglamentos aprobados, excepto cuando la solicitud se refiera al incumplimiento de un trámite correspondiente impuesto por un tribunal. Art. VI del Reglamento Núm. 8583, *supra*.

El *Plan de Reorganización del Departamento de Corrección y Rehabilitación,* Plan Núm. 2-2011, 3 LPRA Ap. XVIII, según enmendado, reconoce el derecho del miembro de la población correccional a ser enviado a la institución correccional más cercana posible a la localidad geográfica en que se encuentre su núcleo familiar. Art. 9(k) del Plan Núm. 2-2011, *supra.* No obstante, dicha ubicación queda sujeta a que no se afecte su plan institucional, que no conlleve un riesgo a su seguridad y que exista disponibilidad de espacio en la facilidad correspondiente. *Íd.*

El Reglamento Núm. 9151, *supra,* provee un sistema organizado para ingresar, procesar y asignar a los miembros de la población correccional a las instituciones y programas del DCR. Conforme a dicho Manual, estos serán clasificados de acuerdo con el nivel de custodia restrictiva más bajo que se requiera, la asignación de vivienda y la participación en programas apropiados, entre otros. Art. III del Reglamento Núm. 9151, *supra.*

A esos fines, se estableció el Comité de Clasificación y Tratamiento en cada institución que albergue miembros de la población correccional sentenciados. Art. IV, Sec. 2 del Reglamento Núm. 9151, *supra.* Dicho Comité evalúa las necesidades de seguridad y de programas del confinado para determinar su plan institucional. *Íd.* Además, interviene en recomendaciones a programas y áreas de servicios, pases con o sin escolta, revisión y aprobación de cambios al plan de tratamiento institucional y solicitudes de pases. *Íd.* Para ello, contará con la información provista por el técnico de servicios sociopenales y el oficial correccional sobre clasificación, seguridad y adaptación al confinamiento. *Íd.*

En cuanto a los traslados entre instituciones de un miembro de la población correccional sentenciado, la solicitud de traslado generada por este o por la institución será presentada por el técnico de servicios sociopenales al Comité de Clasificación y Tratamiento

para evaluación y recomendación. Art. IV, Sec. 8 del Reglamento Núm. 9151, *supra.* Dicha recomendación será enviada a la Oficina de Clasificación de Confinados, órgano que emitirá la determinación final luego de revisar, entre otros asuntos, los fundamentos de la solicitud, la puntuación inicial o de reclasificación vigente, las necesidades presentes del confinado, el formulario de clasificación de salud reciente y cualquier información especial de vivienda. *Íd.* Luego, la determinación final de ubicación será remitida a la Oficina de Manejo de Control de Población. *Íd.*

El principio fundamental de toda solicitud de traslado será ubicar al miembro de la población correccional en la institución menos restrictiva posible para la cual cualifique, conforme a las normas aplicables. Art. II, Sec. 8 del Reglamento Núm. 9151, *supra.* Entre los factores a evaluarse se encuentran, entre otros, el control y manejo de la población correccional; cambios en el nivel de custodia; comportamiento continuo que represente un serio problema de adaptación o incumplimiento con las normas de la institución y el plan institucional; recomendaciones emitidas por un tribunal; necesidades de cuidado médico o tratamiento; necesidades de tratamiento psiquiátrico o psicológico; riesgo de fuga; cercanía al hogar y a los familiares, o la posibilidad de aumentar las visitas; participación en programas de trabajo, educativos u otros; y traslados relacionados con custodia protectora. *Íd.*

Conforme a la *Enmienda al Manual para la Clasificación de Confinados*, Reglamento Núm. 9287, 20 de mayo de 2021, Departamento de Estado, particularmente el Apéndice I, Anejo 1, el miembro de la población correccional que no esté de acuerdo con la determinación del Comité de Clasificación y Tratamiento podrá solicitar reconsideración de la decisión de custodia mediante el formulario correspondiente ante el Supervisor de la Unidad Sociopenal de la institución, por conducto del Técnico de Servicios

Sociopenales. Asimismo, dicho Anejo contempla el trámite de revisión judicial ante el Tribunal de Apelaciones, según allí provisto.

### C. Visitas familiares y permisos de salida

Por otro lado, el Artículo 9 del Plan Núm. 2-2011, *supra*, reconoce el derecho de los miembros de la población correccional a permitir todo tipo de comunicación que, en forma compatible con su seguridad, la de otro miembro de la población correccional o la de la comunidad, propenda a asegurar su bienestar, especialmente en cuanto a mantener los vínculos familiares. A su vez, el Secretario del DCR queda facultado para adoptar los reglamentos necesarios sobre la designación de visitantes autorizados, preparación de expedientes de visitas, visitas especiales, responsabilidades de confinados y visitantes, supervisión del área de visitas, suspensión de visitas y otros asuntos relacionados. Art. 10-A del Plan Núm. 2-2011, *supra*.

El Reglamento Núm. 9027, *supra*, regula las visitas a miembros de la población correccional. Arts. I y IV del Reglamento Núm. 9027, *supra*. Dicho Reglamento reconoce que la familia constituye un refuerzo positivo en el área emocional primaria durante el proceso de rehabilitación del miembro de la población correccional. Art. II del Reglamento Núm. 9027, *supra*.

Además, el Artículo 7(ss) del Plan Núm. 2-2011 confiere al Secretario del DCR discreción para autorizar que los miembros de la población correccional cuenten con permisos para salir de las instituciones correccionales, así como para reglamentar el procedimiento mediante el cual se establecerán los requisitos para cualificar y solicitar dicho privilegio. *Íd.*

Por su parte, el *Reglamento para la Concesión de Permisos a los Miembros de la Población Correccional para Salir de las Instituciones Correccionales del Gobierno de Puerto Rico*, Reglamento Núm. 9499, 19 de septiembre de 2023, Departamento de Estado, regula el procedimiento para evaluar y conceder permisos de salida cuando se

determine que constituye una medida de tratamiento conveniente y necesaria para la rehabilitación mediante la readaptación progresiva a la comunidad. Dichos permisos no serán concedidos como un derecho ni como una merced, sino como una medida de tratamiento individualizado para fortalecer los lazos familiares, observar los ajustes progresivos a la comunidad y desarrollar sentido de responsabilidad. Art. VI del Reglamento Núm. 9499, *supra.*

Asimismo, los permisos serán autorizados por el Secretario del DCR o su representante autorizado, luego de la evaluación y recomendación del Comité de Clasificación y Tratamiento de la institución y a base de los méritos de cada caso. *Íd.* En cuanto al permiso para visitar condicionalmente el hogar o el de algún familiar, el Reglamento incluye, entre otros, a padres, hijos, hermanos, abuelos y relacionados. Art. VIII(A) del Reglamento Núm. 9499, *supra.* Como parte del procedimiento, el técnico de servicios sociopenales evaluará el caso conforme a los criterios del Reglamento, incluyendo el cumplimiento con las terapias requeridas. *Íd.* De recomendarse una investigación, el técnico referirá el caso al Negociado de Programas Especiales y de Rehabilitación y, posteriormente, preparará un *Informe de Recomendaciones* para la consideración del Comité de Clasificación y Tratamiento, el cual emitirá su recomendación al Secretario del DCR o su representante. *Íd.* Además, el miembro de la población correccional será orientado sobre las condiciones del permiso por el técnico de servicios sociopenales u otra persona autorizada, y dicha orientación constará por escrito en su expediente. Art. VI del Reglamento Núm. 9499, *supra.*

### III.

En el presente recurso, el señor Ortiz Pérez planteó que el DCR actuó de forma arbitraria al trasladarlo de Bayamón a Guayama sin el debido proceso administrativo, sin la intervención del Comité de Clasificación y Tratamiento, y en menoscabo de su contacto familiar

y de su proceso de rehabilitación. Además, cuestionó que el recurrido no le concediera el remedio solicitado respecto a la visita a su abuela, sino que se limitara a referirlo a otros trámites administrativos.

Del expediente surgió que la DRA no denegó la solicitud relacionada con la visita familiar, sino que informó al recurrente que sería entrevistado y orientado por el técnico de servicios sociopenales sobre el procedimiento aplicable. Así, la agencia no cerró la puerta al remedio solicitado ni emitió una determinación desvinculada del marco reglamentario; por el contrario, encauzó la petición conforme al trámite correspondiente. Dicho procedimiento exige la intervención inicial del técnico para evaluar la solicitud, orientar al miembro de la población correccional y canalizar el asunto antes de que la autoridad competente pueda autorizar el permiso de salida. Luego de culminada esa fase, corresponde al organismo concernido proceder conforme a las etapas, criterios y determinaciones dispuestas en la reglamentación aplicable. Por tanto, la respuesta impugnada no constituye una negativa definitiva al permiso para visitar a su familiar, sino una actuación preliminar dirigida a viabilizar la evaluación de su solicitud conforme a Derecho.

De igual forma, procede confirmar en cuanto al reclamo de traslado. Conforme al Reglamento Núm. 9151, *supra*, las solicitudes de traslado forman parte del proceso especializado de clasificación y ubicación institucional. Dicho proceso requiere la evaluación del Comité de Clasificación y Tratamiento y la intervención posterior de la Oficina de Clasificación de Confinados, que emite la determinación final de ubicación. Además, según provisto en el Reglamento Núm. 9287, *supra*, el miembro de la población correccional que no esté conforme con una determinación de clasificación puede solicitar reconsideración y, posteriormente, acudir en revisión judicial.

Aunque el recurrente invocó su interés en estar ubicado más cerca de su núcleo familiar, dicho interés no opera de forma

automática ni absoluta, sino que debe armonizarse con el plan institucional, la seguridad, la disponibilidad de espacio, el nivel de custodia y los demás criterios que rigen la ubicación correccional. Del expediente no surge una demostración clara de arbitrariedad, abuso de discreción o violación sustancial de derechos que justifique dejar sin efecto la determinación administrativa. Ello no implica restar valor a la importancia del vínculo familiar en el proceso de rehabilitación, sino reconocer que su consideración debe efectuarse dentro del cauce reglamentario aplicable y por los organismos con competencia para ello. En consideración a todo lo anterior, confirmamos.

**IV.**

Por los fundamentos antes expuestos, se confirma la determinación recurrida.

El DCR deberá remitir copia de la presente *Sentencia* al señor Ortiz Pérez en cualquier institución donde se encuentre recluido.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones